NELSON M. RIDINGS, Respondent, v. THE HANNIBAL
& ST. JOSEPH RAILROAD COMPANY, Appellant.

Kansas City Court of Appeals, February 4, 1889.

1. **Negligence**: DEMURRER TO EVIDENCE : CASE ADJUDGED. Where a railroad switch, used exclusively for the convenience of a coal company, passes through a shed in an engine-house and elevator building of the coal company, in which shed it was customary, from time to time, to leave cars of slack coal to be unloaded into the engine-house through a triangular opening in the wall between the switch and the engine-house, the lower angle of which was about level with the floor of the coal-car and the opening constituted a convenient passway for a man from the car to the engine-house; and where on the morning of the accident the defendant railroad company, as on former occasions, had placed a car of such slack on said switch to be unloaded in said engine-house, and afterward sent an engine on said switch from the east—when theretofore, engines had always come on said switch and approached said shed from the west—to take up a car of nut coal on said switch and extending under said shed until its west end was about opposite said opening and against the east end of the car of slack, and said engine, with a brakeman on the pilot ready to couple on said car of nut coal and the engineer in the cab, proceeded slowly but noiselessly, and without ringing the bell or sounding the whistle, or giving other warning, and its weight forced the car of nut coal backward and the projection of a standard socket caught and crushed the foot of an employe of the coal company who had been engaged in unloading the car of slack, and who, without knowledge of the approach of the engine, had set his foot in the lower angle of the opening and was in the act of passing through it into the engine-house, *held*, the court cannot, as a matter of law, say that defendant was not guilty of negligence and take the case from the jury.

2. —— : —— : CONTRIBUTORY NEGLIGENCE. Such employe of the coal company had a right to be there and was not a trespasser, and as, while he engaged in his work, he faced to the west, whence engines theretofore approached, and though not expecting nor listening for an engine, he was nevertheless attentive, but heard and saw nothing of the approaching engine as he undertook to step into the engine-house, *held*, the court should not as a matter of law, declare such employe guilty of such contributory negligence as to prevent his recovery.

3.  —— : —— : —— : RULE AS TO CONTRIBUTORY NEGLIGENCE. "The recklessness or heedlessness should be very apparent to justify a declaration by the court as a matter of law that certain conduct on the part of plaintiff amounts to contributory negligence. Where it is questionable, it is the province of the jury to say whether, under the circumstances of the particular case, the conduct amounts to contributory negligence." ( *Affirming Taylor v. Pacific Ry. Co.,* 26 Mo. App. 336 ).

*Appeal from the Macon Circuit Court.*—HON. ANDREW ELLISON, Judge.

AFFIRMED.

Statement by the court.

This action is for personal injury to plaintiff.   He recovered below and defendant appeals.

On the thirteenth day of March, 1886, the plaintiff was in the employ of Loomis & Snively at Bevier, Mo. At this time and long prior thereto, these gentlemen were owners and operators of a coal mine called "No. 1." The shaft of this mine was only a few feet from the main line of defendant's railroad and a few yards west of the depot, in the town of Bevier.   A coal switch which had been constructed there for the convenience of Loomis & Snively, but which was owned, operated and the rolling-stock furnished by defendant, was laid along the south side of this shaft and joined the main line of the railroad a few car-lengths east and west of this shaft. Directly over the shaft of the mine and about the middle of the switch, these operators had erected an elevator to raise coal from the shaft.   In this elevator or "engine-house" were located the hoisting and compressor engines used for operating the mine.   The southern part of the building was built over the switch-track, forming a long open shed through which the switch-track ran, the north wall of this shed being formed by the south wall of the building.   Over this shed were located the coal-bins of the mine, from which the coal was conducted by chutes directly down into the cars

under them.   This long open shed was some eight or nine feet wide, and the track through it was at the time in question built so near the north wall of this shed that the cars frequently rubbed against it.   Both the north and south walls of this open shed had to be formed strongly of posts, well braced, to support the coal-bins overhead.   These upright posts were about twelve inches square and about six feet apart.   The row of these posts which separated the shed from the north part of the building was boarded up except a space of six feet between two posts near the furnace of the engines.   This space was unobstructed except by two braces which connected the upright posts with the beam above.   At the time of the injury the triangles or spaces formed by these braces next to each post were three feet and eight inches in height, and two feet and three inches in width at the top, and furnished ample room for the passage of a man to and from the engine-room to or from a loaded car in the shed.   When a car was opposite this open space the side of the car came so near the line of posts that there was not convenient passage room below the two braces ; and the braces came so close together in the middle that the center angle between the brace timbers was too narrow for convenient ingress and egress when such loaded car stood in this manner.   The lower angle of these braces was near the height of the platform of a coal-car and furnished a convenient rest for the foot in going to or coming from a coal-car.   These open spaces were used to shovel fuel through from a car standing underneath and opposite. This, however, happened only when mine No. 1 had not been hoisting coal, and therefore did not furnish dust or slack coal enough to supply its engines.   Then it became necessary to bring a car-load of this fuel coal from some other mine to supply the deficiency.   It was part of the business of the employes of the railroad company making up coal trains at Bevier to make these transfers.

VOL. xxxiii—34

On said morning of March 13, a car-load of this slack coal brought there thus for fuel purposes, stood on this switch opposite the engine-room to be unloaded. Standing with its drawhead against the drawhead of this car was another car just loaded with nut coal from the bins above. A part of this nut-coal-car extended east outside of the building. This nut-coal-car was alongside of and closed a portion of the lower part of the open space between the posts, but the platform made by the ends of the slack and nut-coal-cars was opposite the west brace or triangle. Plaintiff, whose duty it was to unload this slack for fuel, had passed from the engine-room to the platform in question through this triangle and had shoveled slack through it for about half an hour. Prior to going there he had made an observation from the east door of the building and saw the coal engine east of the depot and on the switch north of the main track headed east. The evidence tended to show that the coal engine had never before, in the knowledge of any employe of the coal company who testified upon the matter, come down upon the east side of the switch. The plaintiff and J. W. Whittaker, assistant engineer, both testified that it was the "first time" they ever saw it there. A. F. Bunker, superintendent, testified that "it was very rare," and that the custom was to put empty cars on this east switch, "pinch" them down to be loaded, and on to the west end of the switch where the coal train would come in at night and take them out. On this occasion the coal engine came in on the east switch, moved down this grade toward the coal-shed without whistling, ringing the bell, blowing off steam, or making any noise whatever, "not as much as a wagon would make." Plaintiff testifies that he was listening, although not expecting an engine from that direction. The evidence tended to show that he could see out in both directions through a space of eighteen inches or more, and that the trainmen, if observing, could have seen him. The engine was headed west with a brakeman standing

on the cow-catcher and a fireman or engineer in the cab of the engine. The engine came slowly and noiselessly down the switch from the east, the fireman and engineer in the cab and the brakeman standing on the cow-catcher ready to couple on to the car. The weight of the engine came against the car while the plaintiff was in the act of stepping from the car platform to the engine-house, and his foot was caught in the angle by the standard of the nut-coal-car and crushed. The east end of this switch was an unusual place for an engine to be. The evidence discloses that workmen were employed in this shed in loading cars from the chutes, in pinching them out on the west end of the switch for removal by the coal train, or occasionally in unloading slack for fuel. The evidence is conclusive that no signal or other warning was given as the engine was going down the switch, and it tends to show that the trainmen could have seen the plaintiff by looking in that direction.

*M. A. Reed* and *Strong & Mosman*, for appellant.

(1) No negligence being shown, defendant's demurrer to the evidence should have been sustained. *Maschek v. Railroad*, 71 Mo. 276 ; *Mohan v. Railroad*, 64 Mo. 274. (2) No notice or warning was necessary. ( *a* ) Either statutory, as that is for the protection of the traveler on the highway ; ( *b* ) nor otherwise, as defendant could not see nor apprehend danger to any one. *Bell v. Railroad*, 72 Mo. 58 ; *Bauer v. Railroad*, 69 Mo. 219 ; 35 Kansas, 354 ; 29 Kansas, 116 ; *Hallihan v. Railroad*, 71 Mo. 116, 117 ; *Henry v. Railroad*, 76 Mo. 295 ; *Gordon v. Livingstone*, 12 Mo. App. 267 ; *Kahl v. Lane*, 37 N. J. Law, 8 ; Cooley on Torts, 659. (3) It was plaintiff's duty to listen. *Stepp v. Railroad*, 85 Mo. 235 ; *Fletcher v. Railroad*, 64 Mo. 484 ; *Lenix v. Railroad*, 76 Mo. 86 ; *Purl v. Railroad*, 72 Mo. 168. (4) The nearness of this track to the building is the only legal and proximate cause of plaintiff's injury. 1 Rorer on

Railroads, 528; *Stepp v. Railroad*, 85 Mo. 233; *Powell v. Railroad*, 76 Mo. 80. (5) Plaintiff's testimony shows him guilty of such contributory negligence as to defeat recovery. *Henry v. Railroad*, 76 Mo. 293; *Harlan v. Railroad*, 64 Mo. 483; *Price v. Railroad*, 77 Mo. 511; *Railroad v. Leohy*, 9 Ill. App. 353; *Smith v. Railroad*, 55 Iowa, 33. (6) His own rash act brought him injury. *Powell v. Railroad*, 76 Mo. 80. (7) Not knowing that plaintiff was there and. having no reason to suspect it, defendant is not liable. *Straus v. Railroad*, 75 Mo. 191; *Ostertag v. Railroad*, 64 Mo. 425-6; 25 Kas. 62; *Taylor v. Railroad*, 86 Mo. 463. (8) Unless defendant was aware of the danger, the concurring negligence of plaintiff defeats recovery. *Straus v. Railroad*, 75 Mo. 191-2; *Nelson v. Railroad*, 68 Mo. 593. (9) The custom of Loomis & Snively to unload coal cannot affect defendant unless it had personal knowledge thereof. *Walsh v. Trans. Co.*, 52 Mo. 434; *Ober v. Carson*, 62 Mo. 214; *Brown v. Stimple*, 21 Mo. App. 338; *Ins. Co. v. Neilberger*, 74 Mo. 167; *Coquard v. Bank*, 12 Mo. App. 261.

*W. P. Beach* and *B. R. Dysart*, for respondent.

(1) The evidence did not warrant the court to take the case from the jury on the ground of contributory negligence. *Taylor v. Railroad*, 26 Mo. App. 336, and cases cited; *Kelly v. Ry. & Trans. Co.*, 18 Mo. App. 151. (2) There was testimony tending to show negligence on the part of defendant, which, unexplained, and without effort at exculpation, warranted the verdict of the jury and the. recovery of plaintiff. *Dougherty v. Railroad*, 9 Mo. App. 478; *Frick v. Railroad*, 5 Mo. App. 435; affirmed, 75 Mo. 595; *Kelly v. Railroad*, 75 Mo. 138; Whitaker's Smith on Neg., 423 *et seq.*, and notes under title of *Res Ipsa Loquitur* ; *Isabel v. Railroad*, 60 Mo. 475; *Hicks v. Railroad*, 64 Mo. 430. (3) Railroad companies, in operating and running their

engines and cars in villages and cities, from the danger-
ous character of their appliances, are held to the utmost
care and caution on the part of their servants to avoid
inflicting injury, and the questions of negligence, both
on the part of the defendant and of the plaintiff, should
be submitted to the jury. *Johnson v. Railroad*, 49
Wis. 529; 1 Am. & Eng. R. R. Cas. 155, and cases cited ;
*Smith v. Railroad*, 25 Kans. 738. (4) The evidence
tends to show the men on the engine did see, or could
have seen plaintiff's danger. (5) "Where the thing is
shown to be under the management of the defendant, or
his servants, and the accident is such as, under an ordi-
nary course of things, does not happen if those who
have the management use proper care, it affords reason-
able evidence, in the absence of explanation by the
defendant, that the accident arose from want of care.
*Dougherty v. Railroad, supra.* (6) At all events,
defendant's employes and rolling-stock operated the
switch, and it cannot escape its liabilities. *Smith v. Rail-
road*, 25 Kan. 738 ; *Speed v. Railroad*, 71 Mo. 303. (7) If
these trainmen knew anything of the custom or fact
of unloading slack, no one could so well disclose their
ignorance as themselves, and the failure of the defendant
to produce their evidence places the matter under the
rule of *res ipsa loquitur*. Whittaker's Smith on Negli-
gence, chap. 6, p. 419, and notes and authorities cited.
(8) The evidence is conclusive that the plaintiff had
never before known the trainmen to propel an engine
on the east switch, and their noiseless approach was the
more dangerous to him under the circumstances, and jus-
tified the jury in finding that it was the proximate cause
of his injury. *Railroad v. Kirk*, 90 Penn. 15; 1 Am. &
Eng. R. R. Cases, 45 ; *Frick v. Railroad*, 5 Mo. App. 435 ;
affirmed, 75 Mo. 595 ; *Bauer v. Railroad*, 69 Mo. 219 ;
*Hodges v. Railroad*, 71 Mo. 50. (9) Plaintiff was not
a trespasser, but where it was his right and duty to be ;
and as the trainmen were approaching a shed where
they had good reason to believe that workmen were

likely to be employed, it was their duty to be on the lookout for them ; and the evidence tends strongly to prove that the trainmen, by the exercise of proper care, could have discovered plaintiff in time to have averted the accident. *Kelly v. Railroad*, 75 Mo. 138, cited and distinguished in *Rine v. Railroad*, 88 Mo. 392.

ELLISON, J.—The defendant offered no evidence or instructions and bases its whole exception on the demurrer to the plaintiff's evidence. It is therefore to the sufficiency of the case as made out by plaintiff that we will direct our attention.

The switch where the car was standing, upon which plaintiff was at work, though operated by defendant's rolling-stock, was built, mainly, for the use and convenience of Loomis & Snively in their mining operations, and was used by them in loading cars for shipment and in occasionally receiving slack coal from other mines for fuel in running the mine at this switch. Plaintiff, being the servant of Loomis & Snively, at this mine, had a right to be engaged in the work of unloading the car standing on this switch, and the case is not, by any means, as if he had been a trespasser upon defendant's track.

The questions then are these, can we, under the evidence in this case, say, as a matter of law, that defendant was not guilty of negligence in going onto the switch and approaching the car loaded with nut coal ? If we cannot say this, and in consequence hold that there was sufficient of negligence to go to the jury, then, are we justifiable in declaring, as a matter of law, that plaintiff was guilty of such contributory negligence as to prevent his recovery ? Our opinion is in favor of the plaintiff on both propositions. There was evidence tending to show that defendant knew that cars were occasionally unloaded as was this one, and that this particular car had been brought to this point and switched off onto this side-track the day of the accident.

The evidence tended further to show that on this occasion the engine, for the first time, approached the shedroom from the east end of the switch, it having always previously gone in from the west end. It appears also that while the engine, in approaching this car, did so carefully and properly, so far as speed was concerned, that it nevertheless went noiselessly, without ringing the bell, sounding the whistle, or indicating its approach in any other manner. As to plaintiff's acts and conduct, there was evidence tending to show that the platform made of the ends of the two cars and upon which he was standing, was about on a level with the lower end of the angle or "crotch" made by the braces and upright post supporting the upper part of the structure; that this "crotch" made a convenient foot-hold in passing from the car through the hole made by the braces into the engine-room; this hole was three feet and eight inches in width. Before commencing to unload, plaintiff had noticed an engine "east of the depot, fifty yards from where I was, on the north switch. Between me and that point were two tracks, the main line and the siding. The engine was headed east." The engine which went in on the east end of the switch and which caused the accident, *was headed west.* While engaged at this work, plaintiff kept his face to the west, the direction from which the engines had theretofore approached. His work made no more "noise than shoveling sand," and while not expecting or listening for an engine, he was nevertheless attentive. Loomis & Snively's employes had been in the habit of unloading coal at this place for twelve months. Plaintiff was in the act of stepping from the platform of the cars through the hole into the engine-room when his foot was caught and his heel crushed. He did not know of the approach of the engine until he was struck. From this evidence, contributory negligence could not be declared to be established, as a matter of law. "The recklessness or

heedlessness should be very apparent to justify a declaration by the court, as a matter of law, that certain conduct on the part of the plaintiff amounted to contributory negligence. Where it is questionable, it is the province of the jury to say whether, under the circumstances of the particular case, the conduct amounts to contributory negligence." *Taylor v. Mo. Pac. Ry. Co.*, 26 Mo. App. 336, and cases cited.

The judgment is affirmed. All concur.